No. 89.—Ann E. McDougald, administratrix of Daniel Mc-
Dougald, deceased, and others, *vs.* Edward Carey, assignee
of the Bank of Columbus.

[1.] According to the provisions of the 53d section of the Judiciary Act of
1799, a bill in Equity is not considered as *filed in Court,* for the purpose of
computing the time within which the cause must be tried, until all the
necessary parties against whom a decree is prayed, have been served
with process to appear in the manner prescribed by that Act.

[2.] The provisions of the 53d section of the Judiciary Act of 1799, impos a
special and imperative duty on the Courts of this State, so to order the
proceedings in Equity causes, that the same shall be ready for trial at
farthest, at the third term from the filing of the bill inclusive ; but may be
continued one term longer, upon *very special cause* being shewn, which shall
not extend to more than four terms.

[3.] When a bill has been served on all the necessary parties thereto, as re-
quired by the Statute, and filed in the Clerk's office of the Court to which
it is made returnable, the defendant must appear at the term of the Court
at which the bill is so returned and filed, and demur or plead thereto, at
that term, if he desires to do so ; which demurrer or plea must be argued
and decided during that term, unless the Court, in its discretion, upon
sufficient cause shewn, shall grant further time, as provided by the 3d
rule of Equity Practice.

[4.] According to the requisitions of the Statute, the defendant must answer
the bill at the next succeeding term of the Court, after that in which the
same has been filed.

[5.] Exceptions to the defendant's answer, must be filed before the hour for
the Jury business, on the second day of the term in which the answer is
required to be filed, and be determined by the Court during that term.

[6.] The Statute evidently contemplates, that Equity causes shall be set
down for trial at the next succeeding term of the Court after the bill has
been filed therein, and it is the duty of the Court so to order the proceed-
ings, if possible, as to have the cause set down for trial at that term.

[7.] When the demurrer or plea, (if any shall be put in,) and the excep-
tions to the answer, (if any shall be filed,) are all disposed of by the Court,
and the parties are at issue on the bill and answer, and replication filed,
it is the duty of the Court to have an order entered on the Minutes of the
Court, setting down the cause for trial.

[8.] When an Equity cause shall be set down for trial at the second term of
the Court, after the bill is filed, to wit: the next succeeding term there-
after, neither party will be required to proceed to trial at that term, but
will have until the next term thereafter to procure their testimony.

[9.] At the third term of the Court from the filing of the bill inclusive, the cause will be for trial, and must be tried at that term; unless *very special cause* shall be shown to the Court by either party, to induce the Court to continue the same, which shall not extend to more than four terms.

In Equity, in Muscogee Superior Court.    Decision by Judge IVERSON.    November Term, 1852.

Edward Carey, as assignee of the Bank of Columbus, by bill in Equity, complained to the Superior Court of Muscogee County, in behalf of himself and all the other creditors of the late Daniel McDougald, who might choose to come in and be made parties complainants to the bill, and alleged that he was a creditor of the late Daniel McDougald; that he annexed copies of his claims against McDougald to the bill, being copies of a bill of exchange, a promissory note, and two certificates of deposit in the Planters' and Mechanics' Bank of Columbus.

That in September, 1849, McDougald died, leaving an estate in Georgia, according to the best of his information, worth $60,-000, or some such large sum; that McDougald died indebted to various persons besides him, the complainant, and in large amounts; that his estate was insolvent, with a prudent and faithful administration of it; that although McDougald left a widow, Ann E. McDougald, and several brothers and brothers-in-law, no steps were taken by them to administer the estate, until about June following his death; and none would have been taken then, had not a portion of his creditors taken steps to have the estate administered by the Clerk of the Court of Ordinary; that at the July Term of the Court of Ordinary, 1850, at which it was expected authority would be conferred on the Clerk, Mrs. McDougald objected to the administration being conferred on the Clerk, and claimed it for herself; that letters were then granted to her.    That R. B. Alexander, her brother, and A. McDougald, the brother of Daniel, appeared in the Court for her, and in reply to the inquiries of the Court, as to the value of the estate in Georgia, represented Daniel McDougald to be insolvent, and his estate in Georgia to be worth not more than $15,-000; that upon this, the Court required her to give bond and

security in the sum of $36,000; which she did, with R. B. Alexander and Duncan McDougald, as sureties.

That he, Carey, believed the statements to have been made with the approbation of Mrs. McDougald, for the purpose of reducing the amount of the bond, with a view to the waste of the estate ; that the statements were not true.

That the administratrix did not make out and return an inventory or cause the estate to be appraised, until about the 11th of January, 1851; when there was returned to the Clerk of the Court, a paper purporting to be an inventory and appraisement.

That this is not verified by the oath of Mrs. McDougadl, nor is it under her proper hand, but was made out and returned by R. B. Alexander, who acted as her agent.

That Daniel McDougald had in cash at the time of his death, $9,000 ; that he was then in possession of a plantation, on the east side of the Chattahoochee river, with the negroes on it, of the value, with the stock, &c. of $25,000; that Duncan McDougald claimed to have the title to the plantation and negroes, but if he had the title, it was the result of fraud between him and Daniel McDougald, to injure the creditors of Daniel ; that Daniel bought the plantation at Sheriff's sale, and paid for it ; that he bought or raised most, if not all the negroes ; that if title was transferred to Duncan, it was done without a sufficient consideration.

That Daniel had at his death a large amount of choses in action ; that these and the other specified chattels, had been removed by Mrs. McDougald or R. B. Alexander, or Duncan McDougald.

That Daniel McDougald in his lifetime, recovered a judgment against Tomlinson Fort ; that on the 28th of December, 1850, the proceeds of the judgment, $5173.50, were paid over to Mrs. McDougald, administratrix, who then receipted for the same.

That none of the before-mentioned property or money, is mentioned in the inventory.

That Daniel McDougald had title to a tract of land, lying partly in Bibb and partly in Twiggs, worth $8000 or $9000 ; that R. B. Alexander, as agent of the administratrix, in December, 1850, directed the attorney of the estate to sell the

tract of land at private sale, promising to procure an execution against Daniel McDougald, and have it levied on the land, and have the land sold to perfect a title in the purchaser, with a view to the waste of said land, as part of the estate ; that in pursuance of the arrangement, R. B. Alexander, as her agent, procured an execution in favor of the Mechanics' Bank *vs.* Daniel McDougald, which, as complainant had been informed, had been paid off, and caused it to be levied on the land, and a sale to be advertised for the 1st Tuesday in April, 1851 ; that this sale would have taken place, but for the interference of the Superior Court of Muscogee County, on a bill filed by William Dougherty ; that the application by this bill was, after argument, refused ; and that he, Carey, feared and believed that the administratrix would carry out her fraudulent purpose, and sell the land, unless prevented by the Court.

That the bond of the said Ann E. afforded the creditors little security, she being worth nothing, apart from her interest in the estate, and the estate of R. B. Alexander, one of her sureties, being insolvent, and the other surety, Duncan McDougald, not being worth more than $5000.

That he, complainant, *feared* the estate would be wasted, so as to defeat the collection of his demands.

The bill then prayed the Court to interfere in the premises, and by the appointment of a receiver, &c. and the adoption of such other orders, writs, or decrees, as would repair the waste committed, and prevent that apprehended, and save the estate for those entitled to it ; and it prayed for such other and further relief, as to the Court should seem reasonable and just.   It prayed an injunction to prevent the sale of the said tract of land ; and it prayed subpœnas to be directed to Ann E. McDougald, Alexander McDougald and Duncan McDougald.

The bill was sworn to by Carey, on the 25th of December, 1851.   A subpœna as prayed for, was annexed to the bill, dated the 29th of November, 1851.   The bill is marked, " filed in office, this 25th November, 1851.   E. S. Harden, Clerk."

On the 1st of December, 1851, the bill was served on Ann

E. McDougald ; on the 13th, it was served on Alexander Mc-Dougald, and on the 17th, on Duncan McDougald.

To this bill the defendant, Ann E. McDougald, filed her answer, on the 10th of May, 1852, and the other two defendants filed theirs on the 13th of November, 1852. These answers are at great length, and for the most part they deny the allegations in the bill. They also set up against the complainant several defences ; amongst others, a set-off, and a full settlement.

On the 11th of May, 1852, the complainant obtained leave of the Court to amend his bill ; and on 13th he filed an amendment.

By this amendment, he alleged that payment of his note, draft and certificate of deposite, had been demanded at the time when they respectively fell due ; that payment was refused, and that Daniel McDougald was duly notified of such refusal.

It also alleges, that at May Term, 1849, James S. Watson and William C. Watson, obtained a decree against the estate of James C. Watson, for $13,208.95 ; that this decree, about the first of the year after it was rendered, was purchased by Daniel McDougald and paid for ; that since his death, Ann E. McDougald, with the view of keeping this decree out of the regular administration, and of appropriating it to her own use, had procured a transfer of the decree to herself individually, and had the same levied.

He also alleged, that she had collected money on the notes given Daniel McDougald in his lifetime, for land.

On the 30th of November, 1852, the defendants all filed their joint answer to the amended bill. In this answer, they denied the greater part of the allegations contained in the amendment to the bill.

On the 23d day of December, 1852, the complainant obtained from the Court, an order that the amendment that day filed to the bill, should be allowed ; that the defendants or their counsel, should be served within thirty days from that date, with a copy of said amendment, and the said Henry J. Devon, Seaborn Jones and Samuel A. Billing, administrators of R. B. Alexander, deceased, should also be served within the time aforesaid, with

a copy of said original bill, and the amendments theretofore made thereto, as well as the amendment that day allowed; that all said defendants should be served with a copy of that order, and that they should appear and answer said bill as amended on or before the first day of the then next term of that Court, with the liberty of pleading or demurring thereto, or both, if they thought proper to do so.

On the same 23d of December, 1852, the complainant filed the said amendment to the bill.

By that amendment, he made a number of allegations, and amongst others, certain material allegations against persons not parties to the bill, namely: Henry J. Devon, Seaborn Jones and Samuel A. Billing, as administrators of Robt. B. Alexander, and it prayed that these persons might be made parties defendants to the bill as amended, and that they might answer the charges and allegations of the same.

The defendants objected to the granting of the last mentioned order by the Court, but the Court overruled the objection and granted it.

To this decision they excepted.

Mrs. McDougald then presented her petition to the Court, to compel the complainant to elect whether he would proceed against her for the matters contained in the bill, in Equity or at Law.

At the time when the bill was filed, suits were pending in the said Superior Court on its Common Law side, in favor of the complainant against the defendant, Ann E. McDougald, as administratrix of Daniel McDougald, deceased, founded on the same note, draft and certificates of deposite aforesaid.

The Court below refused to grant her petition, and to this refusal she excepted.

The defendants then moved to dismiss the bill for want of a due and diligent prosecution of the case, and for the reason that the proceedings in the case had been so ordered, that the case could not be ready for trial at the third term from the filing of the bill inclusive. This motion the Court overruled.

And to this decision the defendants excepted.

McDougald and others *vs.* Carey.

Jones, Benning & Jones, for plaintiff in error.

W. Dougherty, for defendant.

*By the Court.*—Warner, J. delivering the opinion.

This bill was originally filed on the 25th day of November, 1851, against the administratrix of Daniel McDougald, Alexander McDougald and Duncan McDougald, praying for the appointment of a receiver, &c. to secure the assets belonging to the estate of Daniel McDougald, for the benefit of his creditors. On the 10th day of May, 1852, Ann E. McDougald, the administratrix, filed her answer, and on the 13th of May, 1852, the other two defendants filed their joint answer to the bill.

On the 13th of May, 1852, the complainant, by leave of the Court, amended his bill.

On the 23d of December, 1852, the complainant obtained leave of the Court to make another amendment to his bill, by which Devon, Jones and Billing, administrators of Robert B. Alexander, were made parties to the original bill, and an order was granted by the Court, that the several parties be served within thirty days from the date of the order, with a copy of the amendment, and that Devon, Jones and Billing, the newly made parties defendants, be served within the time aforesaid, with a copy of the original bill as amended; and it was further ordered, that all the parties should appear and answer the bill as amended, on or before the first day of the then next term of the Court, with liberty of demurring or pleading thereto, or both, as they might think proper.

To the granting this latter order by the Court, the defendants excepted, and now assign the same as error, on the ground that the granting such order, necessarily extended the time beyond which the Statute requires the cause shall be ready for trial.

[1.] This question involves the construction of the 53d section of the Judiciary Act of 1799, which declares that the proceedings on the Equity side of the Court shall be by bill and such

other proceedings as are usual in such cases, until the setting down of the cause for trial; and *the Court shall order the proceedings in such manner*, as that the same *shall be ready for trial*, at furthest, at the third term from the filing such bill inclusive, unless *very special cause* be shewn to induce the Court to continue the same, which *shall not extend to more than four terms;* and a copy thereof shall be served on the opposite party, at least thirty days *before the filing such bill in Court;* and the party against whom such bill shall be filed, *shall appear and answer to the same at the next Court;* and if he, she or they, shall fail to do so, the facts in the said bill *shall be taken pro confesso*, and the Court may proceed to decree as to justice shall appertain.    *Prince*, 447.

[2.] The several provisions of this Statute impose the same obligation and duty upon the Courts, as the provisions of any other Legislative enactment of the sovereign authority of the State.   The special and imperative requirements of this Act of the Legislature, cannot be considered by the Courts, as mere *brutum fulmen*, and disregarded at their will and pleasure, in ordering the proceedings in Equity causes in this State.   It is our duty, therefore, to give to this Statute, such a construction as will make it a *practical working* Statute, according to the true intent and meaning of the Legislature.

[3.] When a bill is exhibited to the Court, and the necessary process annexed thereto, and a copy thereof is served on the defendant thirty days before the Court to which it is made returnable, it is then to be returned to the Court, and filed in the Clerk's office of such Court.   The bill being filed in contemplation of the Statute, the defendant must appear at the term of the Court at which the bill is filed.   If the defendant desires to demur or plead to the bill, he must file his demurrer or plea at the *return term thereof*, and such demurrer or plea, must be argued and determined by the Court *at that term*, unless sufficient cause be shewn.   See 3*d rule Equity Practice*, 2 *Kelly*, 481.

[4.] At the next term of the Court after that at which the bill has been filed, the defendant must answer the bill.

[5.] If the complainant desires to except to the defendant's answer, he must do so by filing his exceptions before the hour

for Jury business, on the second day of the term in which the answer is required to be filed, and the Court must determine as to the sufficiency or insufficiency of the answer *at that term.* See *4th rule Equity Practice,* 2 *Kelly,* 482. It will be observed, that by our rules of Equity Practice, the filing his answer by the defendant, does not necessarily overrule his demurrer or plea, but that the same may be separately disposed of in their order.

[6.] The Statute evidently contemplates, (as do the Rules of Practice, to carry into effect the provisions of the Statute,) that the cause shall be ready to be set down for trial, during the second term of the Court, next after that to which the bill was made returnable and filed; and it is the duty of the Court so to order the proceedings, if possible, as to have the cause set down for trial at that term.

[7.] We understand "the setting down the cause for trial" to mean, that when the demurrer, plea, exceptions to the answer, &c. have been disposed of by the Court, as required by our rules of practice; in other words, when the pleadings are made up, and the parties thereto are at issue, the complainant files his replication, as required by the 5th Equity rule of Practice, and then the Court orders the cause to be set down for trial.

The Statute, as we have seen, makes it the *imperative duty of the Court so to order the proceedings,* as that the cause . shall be set down *and be ready for trial,* at farthest, at the third term of the Court, from the filing the bill inclusive, unless *very special cause* be shewn, to induce the Court to continue the same, which *shall not extend to more than four terms.* At the forth term from the filing the bill inclusive, the cause *must be tried.*

[8.] When the cause is set down for trial by the order of the Court at the second term thereof after the filing of the bill, neither party will be required to proceed to trial at that term, but will have until the next term of the Court thereafter, to procure their testimony.

[9.] At the next succeeding term of the Court after the cause has been set down for trial, either party will be entitled to a continuance on *special cause* shown: but such continuance cannot

postpone the trial of the cause beyond the fourth term of the Court from the filing the bill inclusive; for the reason, that the Statute so *expressly declares.*

It was suggested on the argument, that in case the defendant should die, or the case be carried up to this Court by writ of error, the trial of the cause would necessarily have to be postponed beyond the fourth term of the Court, and therefore, the provisions of the Statute could not be practically carried into effect. The answer is, that when the parties and the Court are prohibited from proceeding with the cause, by the express enactment of the law, the time during which they are so prohibited, is not to be computed against them. It was upon this principle that the case of *Tarver vs. Cowart* was decided, in which it was held, that the Statute of Limitations did not run against a plaintiff in this State during the twelve months he was inhibited from suing an executor or administrator. 5 *Geo. Rep.* 66. There is no practical difficulty then, in carrying into effect the 53d section of the Judiciary Act of 1799, when the Courts do what the Legislature has peremptorily declared they shall do, (to wit,) *so to order the proceedings in Equity causes, as that the same shall be ready for trial at farthest, at the third term from the filing the bill inclusive, unless very special cause* be shown to induce the Court to continue the same, *which shall not extend to more than four terms.* The work must be done by the Courts and the parties, within the time prescribed by the Legislature. It has also been suggested, that much delay will be occasioned when the parties are numerous, and widely scattered over the country. The reply is, that the bill is not ready to be *filed in Court,* until all the *necessary* parties have been *served with process to appear.*

The order of the Court excepted to, in the case now under consideration, was granted at the third term of the Court after the original bill was filed against Ann E. McDougald, Alexander DcDougald, and Duncan McDougald. By this order three new parties are made to the original bill (to wit,) Devon, Jones, and Billing; they appear to be *necessary* parties, and a decree is

prayed against them.   At the time this order was made by the Court, the cause had not been set down for trial.   The new defendants insist, that they are entitled to the same time to demur, plead, and *answer* the bill, as they would have been entitled to, had they originally been made defendants thereto ; that it is not in the power of the complainant to deprive them of the time given by the Statute to make their defence to the bill, by making them parties thereto by way of *amendment.*

The new defendants are required to *answer* the original bill as well as the amendments, and it is extremely difficult for us to come to the conclusion, that they are not entitled to all the rights and previleges, as defendants, which they would have been entitled to, had they been made original defendants.   On the score of principle, we think they are entitled to the same rights and privileges, as the Statute gives to original defendants, against whom a bill in Equity is filed. They are required to make precisely the same defence as the original defendants to the bill, and why should they not have the same time to do it ?   In this view of the case, the original defendants contend, that will have the effect to pospone the cause beyond the four terms prescribed by the Statute for the trial thereof, from the time of *filing* the bill in Court, as to them.

We are of the opinion, that upon a fair construction of the Statute, that the bill is not to be considered as *filed in Court*, until all the *necessary* parties thereto have been served with process to appear.   Devon, Jones, and Billing, are necessary parties to enable the complainant to obtain the decree which he seeks.   This bill then, was not served upon all the necessary parties thereto, *and filed in Court*, as contemplated by the Statute, until the term at which the defendants, Devon, Jones, and Billing, were required to answer—that being the first term at which they were required to appear, and the first term of the Court after they were served with process to appear.   The time within which the cause is to be tried, must be computed from that term of the Court in which the bill was filed, after service having been perfected on all the necessary parties thereto.  The

order of the Court requires them to appear and *answer* the original bill and amendments at the first term of the Court after service thereof, perfected on them, which term of the Court is the one at which the bill is to be considered as *filed*, and the one to which they were bound to plead or demur, under the rule; but were not bound to *answer* under the Statute, until the next succeeding term thereafter.

So much of the order, therefore, as required the defendants, Devon, Jones, and Billing, to *answer* the bill at the then next term of the Court was error, and is reversed. The motion to compel the complainant to elect whether he would proceed in Equity or at Law, to collect the money sued for in the Common Law actions, was properly overruled by the Court; for the reason, that it does not appear from the prayer of the bill, that its object is to collect the money due on the demands sued for in the Common Law Court; its object being to secure the assets of the estate of Daniel McDougald from being wasted, so that the same may be applied to the payment of his *debts*.

Let the judgment of the Court below be reversed, on the ground before stated.